UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TENA MARIE ANDRIST,

    Plaintiff,      Case No. 2:18-cv-12314
             District Judge Sean F. Cox
v.            Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

    Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 9), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 12) and AFFIRM THE
COMMISSIONER'S DECISION**

I.  **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 9), **GRANT** Defendant's motion for summary judgment (DE 12),

and **AFFIRM** the Commissioner's decision.

II.  **REPORT**

   Plaintiff, Tena Marie Andrist, brings this action under 42 U.S.C. § 405(g)

and 42 U.S.C. § 1383(c)(3) for review of a final decision of the Commissioner of

Social Security ("Commissioner") denying her applications for disability insurance

(DI) and supplemental security income (SSI) benefits.  This matter is before the

United States Magistrate Judge for a Report and Recommendation on Plaintiff's

motion for summary judgment (DE 9), the Commissioner's cross-motion for

summary judgment (DE 12), Plaintiff's reply (DE 13), and the administrative

record (DE 7).

### A.      Background and Administrative History

Plaintiff alleges her disability began on October 5, 2012, at the age of 52.

(R. at 177, 184.)  She turned 55 years of age on January 31, 2015.  (*Id*.)  In her July

16, 2015 disability report, she lists several conditions (back pain, stenosis, rib

spasms, osteoarthritis, diabetes, kidney problems, and heart problems) as limiting

her ability to work.  (R. at 210.)  Notably, she does not list affective disorder or any

other mental health condition.  Her application was denied in December 2015 or

January 2016.  (R. at 84, 95.)

On or about January 22, 2016, Plaintiff requested a hearing by an

Administrative Law Judge ("ALJ").  (R. at 104-105.)  On September 26, 2017,

ALJ Patricia Carey held a hearing, at which Plaintiff and a vocational expert (VE),

Jacquelyn Schabacker, testified.  (R. at 43-83.)  On January 31, 2018, ALJ Carey

issued an opinion, which found that Plaintiff was not disabled within the meaning

of the Social Security Act.  (R. at 12-42.)

On March 23, 2018, Plaintiff submitted a request for review of the hearing

decision.  (R. at 170-176.)  However, on May 31, 2018, the Appeals Council

denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ Carey's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on July 24, 2018.

### B.    Plaintiff's Medical History

The administrative record contains approximately 482 pages of medical records, which were available to the ALJ at the time of her January 31, 2018 decision.  (R. at 40-42, 306-787 [Exhibits 1F-18F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 5, 2012, the alleged onset date.  (R. at 17-18.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:

- degenerative disc disease of the lumbar spine with mild right neural foraminal narrowing related to disc bulge L2-L3;

- degenerative joint disease of the spine;

- mild distal peripheral neuropathy bilateral lower extremities / mild peripheral neuropathy in the lower extremities;

- osteoarthritis;

- obesity;

- coronary artery disease;

3

- tinnitus of both ears with chronic dysfunction of both eustachian tubes; and,

- the combination of colonic diverticulosis, gallstones, fatty infiltration of the liver, gastroesophageal reflux disease (GERD), gastritis, hiatal hernia, and Costochondritis.

(*Id*. at 18-20.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 21-23.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform light work [*i.e., exertional limitations*]…except the claimant can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally: balance, stoop, kneel, crouch, and crawl [*i.e., postural limitations*]; never work around hazards, such as unprotected heights or moving dangerous mechanical parts [*i.e., environmental limitations*]; and never do work requiring foot controls [*i.e., exertional limitations*].  Furthermore, the claimant is to have a sit/stand option at the workstation where she can change position for two minutes each hour while remaining on task 90% of the time.

(*Id*. at 23-35.)  At **Step 4**, the ALJ determined that Plaintiff was capable of performing past relevant work as an accounting clerk, which did not require the performance of work-related activities precluded by her RFC.  (*Id*. at 35-36.)

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

Thus, ALJ Carey did not need to proceed to **Step 5**, and she therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 5, 2012, through the date of the decision.  (*Id*. at 36.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## E.    Analysis

Plaintiff contends that the ALJ errantly failed to find Plaintiff limited to unskilled work, namely that incorporating her "significant affective disorders into the RFC would have resulted in mental limitations as part of the RFC[,]" which, in turn, would have limited her to unskilled work and, thus, "gridded her out" based

on age.  (DE 9 at 3, 11-12.)  Plaintiff also contends that the ALJ improperly

determined that she was capable of performing work at a light RFC.  (DE 9 at 13-

14.)  The Commissioner contends that the ALJ properly determined Plaintiff's

RFC.  (DE 12 at 5-14.)

### 1.      Skilled versus unskilled work

Plaintiff argues that the ALJ's "[f]ailure to find [her] limited to unskilled

work is reversible error."  (DE 9 at 11-12.)  Preliminarily, Plaintiff seems to invoke

the "grid" rules, namely:  **(a)** she was 55 years of age on January 31, 2015, *i.e.*,

"advanced age[,]" 20 C.F.R. §§ 404.1563(e), 416.963(e); **(b)** she is a high school

graduate (R. at 55); **(c)** her past relevant work as an accounting clerk was

sedentary, skilled work with a specific vocational preparation (SVP) rating of 5 (R.

at 36);[2] and **(d)** *if she had been limited to unskilled work*, it would have resulted in

a finding of disability beginning on January 31, 2015.  *See* 20 C.F.R. § Pt. 404,

Subpt. P, App. 2, Rules 201.06, 202.06.  <u>Thus, Plaintiff's mental health statement

of error boils down to whether she is capable of skilled versus unskilled work</u>.

### a.      The absence of a severe mental health impairment

Plaintiff begins by taking issue with the ALJ's conclusion that Plaintiff's

anxiety and depression are non-severe.  (DE 9 at 11, R. at 19-20.)  As the Social

---

[2] Level 5 SVP is "[o]ver 6 months up to and including 1 year[.]"  ACCOUNTING
CLERK, DICOT 216.482-010.

Security Rulings provide, "[a]n impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities)." SSR 85-28, 1985 WL 56856, *3 (S.S.A. 1985). Plaintiff claims that this *de minimus* standard has been met. (DE 13 at 3-4.)

At Step 2, the ALJ found that Plaintiff's "medically determinable mental impairments of anxiety and depression, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (R. at 19-20.) With respect to this conclusion, the ALJ referenced several records:

- The November 2013 and March 2014 progress notes from Ann M. Roehrs, FNP (Family Nurse Practitioner), who observed intact judgement and insight, intact recent and remote memory, appropriate mood and affect, and alertness and orientation to person, place, time and situation. (R. at 382, 378)

- The November 18, 2014 records of Danny D. Greig II, M.D., who noted: "Patient's acute complaint today is some stress and depressive symptoms. She states this is related to the loss of her father. Her father passed away approximately 5 months ago. . . . She admits to being more frequently tearful and having occasional difficulty with sleeping. We did discuss use

of antidepressant medications to treat grief reaction such as this. The patient is currently resistant to addition of any medication. She denies any suicidal ideation." (R. at 364.)

- The January 7, 2016 progress note of James D. Balger, M.D., who observed appropriate mood and affect, as well as alertness and orientation to person, place, time, and situation. (R. at 690-691.)

- The April 5, 2016 progress note of Susan M. Knoerr, DNP (Doctor of Nursing Practice), FNP, to whom Plaintiff reported feeling overwhelmed but denied any panic attacks, shortness of breath or heart palpitations. (R. at 547.) Knoerr wrote that Plaintiff was alert and oriented and in no acute distress. (R. at 548.) Moreover, Knoerr "encourage[d]" Plaintiff to start buspirone for anxiety. (R. at 549.)

- The April 30, 2016 progress note of Vinosha Balakrishnan, M.D., who documented Plaintiff's complaint of "feeling tired for a long time, ongoing for several months," as well as Plaintiff's denials of sleep disturbance and mood changes. (R. at 680-681.)

- Dr. Balakrishnan's February 22, 2017 notes, which, *inter alia*: **(i)** suspect "mild depression[;]" and, **(ii)** state that anxiety is controlled with Buspar. (R. at 660-661.)

(R. at 19-20.) Moreover, the ALJ cited the July 16, 2015 field office disability report (R. at 206-208), the August 4, 2015 function report (R. at 218-230), and the January 8, 2016 disability determination explanation (R. at 85-95) before concluding that Plaintiff's medically determinable mental impairments "cause no more than 'mild' limitation in any of the functional areas[.]" (R. at 20; 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).) Thus, as the Commissioner reasonably

asserts, there is "substantial support for the ALJ's determination that Plaintiff did not have a severe mental impairment[.]"  (DE 12 at 9.)

###### b.      The absence of a mental health RFC

Plaintiff also takes issue with the ALJ's failure to include mental health limitations within the RFC.  (DE 9 at 11-12, R. at 23.)  "In assessing RFC, the adjudicator must *consider* limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8P, 1996 WL 374184, *5 (S.S.A. July 2, 1996 (emphasis added)).

Plaintiff contends that "a combination of her mental limitations, lack of sleep, and side effects of medication," makes her "unable to perform her past work as an accounting clerk," which has an SVP of 5, and/or limits her to unskilled work.  (DE 9 at 11.)  In addition to the aforementioned records from Dr. Greig (R. at 364) and the February 22, 2017 records from Dr. Balakrishnan (R. at 661), Plaintiff cites:

- The August 5, 2015 third party function report from Sharon E. Mishler, Plaintiff's friend, who agreed that Plaintiff's illnesses, injuries, or conditions affect her sleep, and explained that "she has to sleep in a chair[.]"  (R. at 236.)

- The November 2015 notes of consultative examiner Mohammed Khaleel, D.O., who concluded, *inter alia*, that Plaintiff "has a rib issue that is caused by costochondritis and some type of rib spasm.  She has had this for quite some time and she states that it does not allow her to sleep."  (R. at 509.)

- Knoerr's April 5, 2016 physical medical source statement (MSS), who opined that Plaintiff was "[c]apable of low stress work[,]" as a result of anxiety.  (R. at 553.)

- The August 3, 2016 physical therapy initial evaluation report of Jessica L. Sullivan, DPT (Doctor of Physical Therapy), who noted:  "The patient states she is limited in sleep secondary to her left rib pain, especially when rolling over and only receives about 6 hours a night total for sleep, sleeping usually in her bed or recliner."  (R. at 652.)

(DE 9 at 12.)

However, within her discussion of the opinion evidence, the ALJ addressed Khaleel's consultative examination, Knoerr's MSS, and Mishler's third party function report.  (R. at 33-35 report (R. at 504-509 [Ex. 5F]) (R. at 550-553 [Ex. 11F]), (R. at 235-242 [Ex. 4E]).)  In fact, the ALJ expressly referred to certain portions of Mishler's report, such as the opinions that she can pay attention as needed, finishes what she starts, follows instructions well, gets along well with authority figures, handles stress pretty well, and does fine with changes in routine.  (R. at 35, 240-241.)  The ALJ also noted Mishler's opinions that Plaintiff's ability to handle money had not changed since the illnesses, injuries, or conditions began, did not need to be reminded to go places, and did not need someone to accompany her.  (*Id.*, R. at 241, 239.)  Plaintiff has not argued that the ALJ's treatment of the opinion evidence was errant.  *See*, *e.g.*, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Also, to the extent Plaintiff relies upon Sullivan's August 3, 2016 physical therapy *initial evaluation* (R. at 651-655), the ALJ expressly cited Sullivan's September 7,

2016, physical therapy *discharge summary*.  More to the point, Sullivan is not an

acceptable medical source

Moreover, the ALJ explained the limitations to light work, occasional

postural activities, and various environmental matters.  (R. at 31-32.)  The ALJ

concluded:  "While she indicated inability to multi-task, the evidence is not

supportive of greater limitation for a number of reasons.  In particular, her

extensive care for an active young child, her moderate to low pain ratings, her well

preserved physical examination findings, *her normal mental status examinations*,

and her lack of distress weigh against the need for further limitation."  (R. at 32

(emphasis added).)  Plaintiff's mental RFC statement of error does not contest the

ALJ's credibility finding, *see, e.g.*, 20 C.F.R. §§ 404.1529, 416.929, nor has she

shown that the ALJ's consideration of the record was errant.

Plaintiff's thinly-veiled request to have this Court reweigh the evidence is

not well taken.  "Our task is not to reweigh the evidence.  That is solely the

province of the Secretary."  *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d

472, 472 (6th Cir. 1982) (citing *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir.

1975)).  While it may have been "*reasonable* to limit [her] to unskilled work . . .

[,]" (DE 9 at 12 (emphasis added)), "[t]he decision of an ALJ is not subject to

reversal, even if there is substantial evidence in the record that would have

supported an opposite conclusion, so long as substantial evidence supports the

conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) (citing *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). In the end, as the Commissioner reasonably asserts, there is "substantial support for the ALJ's . . . ultimate determination that no mental RFC limitations were warranted[.]" (DE 12 at 9.)

### 2. Light versus sedentary work: standing and walking

Plaintiff argues that the ALJ's light work RFC is not supported by substantial evidence. (DE 9 at 13.) "Light work involves . . .

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires *a good deal of walking or standing*, or when it involves *sitting most of the time* with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b) (emphases added).[3] "[F]requent lifting or carrying requires being on one's feet up to two-thirds of a workday[.]" SSR 83-10, 1983 WL 31251, *6 (S.S.A. 1983).

---

[3] The ALJ discussed Plaintiff's "extensive care" of a more than 20 pound toddler. (R. at 31.) At the hearing, Plaintiff testified that, three days a week from 7 a.m. – 5 p.m., she cares for her 18-month old, 23-pound great niece, who Plaintiff is able to lift for diaper changes. (R. at 52-53.)

Plaintiff claims that she cannot perform "her past work or any work in the national economy above a sedentary exertional level."  (DE 9 at 14.)  Plaintiff supports her physical RFC statement of error with references to several medical records, such as:

- An October 8, 2012 lumbar spine MRI, which revealed "pronounced degenerative changes at the L4-5 level where there are . . . diffuse right posterolateral disk protrusion particularly extending into and lateral to the right L4-5 neural foramen[,]" and "narrowing of the right L4-5 neural foramen . . . [,]" and "[m]ild degenerative narrowing of particularly the left L2-3 and L3-4 neural foramina . . . ."  (R. at 323-324.)

- The August 7, 2014 examination notes of Meihui Ma, M.D., Ph.D., who concluded that "[t]he studies have revealed evidence of mild distal peripheral neuropathy of both legs, sensory type.  Based on her clinical presentation, she may also have meralgia paresthetica . . . that may account for her burning pain of thighs."  (R. at 325, 538.)

- Dr. Khaleel's November 4, 2015 consultative examination report, specifically the neurologic findings that Plaintiff "is able to bend forward 50% secondary to low back pain, squat 50% secondary to knee pain," and that the "[s]traight-leg raise test is 60 degrees bilaterally in both the seated and supine positions due to low back pain."  (R. at 505.)

- Knoerr's April 5, 2016 MSS, specifically the conclusions that Plaintiff can:  **(a)** sit for 45 minutes before needing to get up; **(b)** stand for an hour before needing to sit down or walk around; and, **(c)** in an 8-hour workday, sit for about 4 hours and stand/walk for about 4 hours.  (R. at 551.)  Moreover, Knoerr opined that, "[w]ith prolonged sitting," Plaintiff should elevate her legs, due to edema and shortness of breath.  (R. at 552.)

- Sullivan's August 3, 2016 physical therapy initial evaluation, when Plaintiff reported "she is limited in standing and must lean on a counter when washing dishes."  (R. at 652.) Moreover, Plaintiff stated that "she has limited walking tolerance to less than 1 block[,]" and "she has difficulty ascending and descending steps secondary to persistent pain." (*Id*.)

(DE 9 at 13-14.)

In Plaintiff's opinion, these items evidence her "significant difficulty standing and walking . . . [,]" and her inability "to stand and walk the required 6 hours per day needed for the performance of light work."  (DE 9 at 14.)  However, as the Commissioner correctly points out,

> . . . the standard on review is to determine if substantial evidence supports the ALJ's conclusion.  By definition, this allows for a case in appropriate circumstances to be decided either way on the same record.  The fact that a record may also possess substantial evidence to support a different conclusion than that reached by the ALJ or that a reviewing judge might have decided the case differently is irrelevant.

*Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

(DE 12 at 11.)  In Plaintiff's case, the ALJ discussed the October 8, 2012 lumbar spine MRI.  (R. at 25, 323-324.)  Ultimately, the ALJ noted:  "[g]iven the extent of findings were not overly limited, the claimant agreed to try arthritis medications first."  (*Id*.)[4]  The ALJ later cited Dr. Ma's August 7, 2014 examination notes, as

---

[4] The ALJ fails to give a record citation for Plaintiff's willingness to first try arthritis medications, which one would expect to be supported by at least somewhat concurrent office notes.  Nonetheless, Plaintiff's physical RFC

well as Dr. Greig's February 17, 2015 notes (R. at 360), after which the ALJ

stated,

> . . . the undersigned has included a sit/stand option with the exertional
> reduction to light work to address the report of numbness in the
> bilateral thighs with shooting pain to the thighs, throbbing back pain,
> increase in pain level with sitting or standing for long periods of time,
> and other pain and stiffness symptoms worse with prolonged activity.

(R. at 26.)  This limitation was intended to "break up the time she was on her feet

or sitting so that she would not have numbness, tingling, stiffness, or pain worse

with being on her feet or sitting for prolonged periods of time."  (*Id*.)  The ALJ

also reviewed the consultative examination report (R. at 27), cited it at least four

other times (R. at 28-30), and, within her review of the opinion evidence, assigned

it "partial weight," although she gave "greater effect . . . to the actual objective

examination findings . . . [,]" (R. at 33).

Plaintiff also seems to take issue with the ALJ's negative treatment of

Knoerr's MSS, as she contends that the opinion is "well supported by the

evidence[.]"  (DE 9 at 14.)  However, the ALJ provided a lengthy review of this

opinion, after which the ALJ provided an explanation for assigning it "little

weight[,]" including that Knoerr was "a nonacceptable medical source."  (R. at 34-

---

statement of error does not challenge this particular observation by the ALJ, nor
does it suggest that the record would contradict the statement that she agreed to try
arthritis medication first.  (*See* DE 9 at 13-14, DE 13 at 4-5.)

35.)[5]  The ALJ also discounted the opinion based on the frequency of examination,

supportability and/or consistency factors.  (R. at 35, 20 C.F.R. §§ 404.1527(c),

416.927(c).)  Moreover, even if Sullivan's August 3, 2016 initial PT evaluation

supports Knoerr's MSS opinion(s), Sullivan is also a nonacceptable medical

source, and, as previously noted, the ALJ cited Sullivan's September 7, 2016

*discharge* summary, albeit not by date, as evidence that Plaintiff's average pain

was 4/10.  (R. at 28-29, 649.)[6]  An RFC need not be premised on the claimant

being pain-free.  *See Luxton v. Comm'r of Soc. Sec.*, No. 1:15-CV-13758, 2016 WL

6806369, at *12 (E.D. Mich. Oct. 26, 2016) (Patti, M.J.) (citing *Brown v. Comm'r*

*of Soc. Sec.*, No. 1:13-CV-99, 2015 WL 404368, at *7 (W.D. Mich. Jan. 29,

2015)), *report and recommendation adopted,* No. 15-CV-13758, 2016 WL

6777839 (E.D. Mich. Nov. 16, 2016) (Ludington, J.).

In her reply, Plaintiff contends that "there is no discussion (by the ALJ or by

the Defendant in her brief) indicating that the Plaintiff is capable of performing at

---

[5] *See Sanders v. Comm'r of Soc. Sec.*, No. 16-CV-13952, 2018 WL 2181096, at *4 (E.D. Mich. Jan. 23, 2018) ("As the ALJ stated, doctors of nursing practice are not 'acceptable medical sources' under the Regulations.") (Majzoub, M.J.), *report and recommendation adopted,* No. 16-13952, 2018 WL 1531595 (E.D. Mich. Mar. 29, 2018) (Battani, J.).  *See* 20 C.F.R. § 404.1513(d) ("Other sources.") (effective Sept. 3, 2013 – Mar. 26, 2017).

[6] This seems to have been in comparison to the June 5, 2017 notes from Alpha Chiropractic Clinic, at which point Plaintiff's pain levels were 3/10 in the cervical spine, 3/10 in the thoracic spine, and 4/10 in the lumbar spine.  (R. at 28-29, 772.)

the established RFC on a *sustained basis*."  (DE 13 at 4 (emphasis added).)  The

Social Security Administration "will rate the degree of your functional limitation

based on the extent to which your impairment(s) interferes with your ability to

function independently, appropriately, effectively, and on a sustained basis."  20

C.F.R. § 404.1520a(c)(2).  "[S]omewhat minimal daily functions are not

comparable to typical work activities."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d

234, 248 (6th Cir. 2007) (external footnote omitted).  Basic work activities means

"the abilities and aptitudes necessary to do most jobs[,]" for example, "[p]hysical

functions such as walking, standing, sitting, lifting, pushing, pulling, reaching,

carrying, or handling[.]"  20 C.F.R. §§ 404.1522(b)(1), 416.922(b)(1).

However, Plaintiff's contention that the ALJ failed to account for the

aftereffects of various activities refers, as an example, to her testimony about the

effects of standing for too long.  (DE 13 at 4-5, R. at 65.)  Plaintiff's physical RFC

statement of error does not contest the ALJ's credibility finding, *i.e.*, that

Plaintiff's "statements concerning the intensity, persistence and limiting effects of

[her] symptoms are not entirely consistent with the medical evidence and other

evidence in the record . . . ."  (R. at 24; *see, e.g.*, 20 C.F.R. §§ 404.1529, 416.929).

Moreover, the ALJ's decision to discount Plaintiff's subjective allegations must be

given deference, as the ALJ was not required to accept Plaintiff's subjective

allegations at face value.  *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511

(6th Cir. 2013) ("an administrative law judge's credibility findings are virtually 'unchallengeable.'") (citing *Payne v. Comm'r of Soc. Sec.,* 402 F.App'x 109, 112–113 (6th Cir. 2010)). Perhaps more importantly, as determined by the ALJ, the RFC includes "a sit/stand option at the workstation where she can change position for two minutes each hour while remaining on task 90% of the time."  (R. at 23, 31.)  The ALJ provided ample explanation for this condition, as outlined above. Thus, even if Plaintiff questioned her capability to work "on a sustained basis at the light level or above . . . [,]" (DE 13 at 5), Plaintiff has not established a more restrictive RFC than that found by the tribunal – a burden that is hers to meet. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").

### F. Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  The ALJ's decision is supported by substantial evidence. Plaintiff has not shown legal error that would upend it.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 9), **GRANT** Defendant's motion for summary judgment (DE 12),

and **AFFIRM** the Commissioner of Social Security's decision.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.* Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d). The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: July 30, 2019                          s/Anthony P. Patti
                                                            Anthony P. Patti
                                                            UNITED STATES MAGISTRATE JUDGE